**Affirmed and Memorandum Opinion filed April 29, 2021.**



In the

# Fourteenth Court of Appeals

---

## NO. 14-19-00397-CV

---

### FITZGERALD TRUCK PARTS AND SALES, LLC, Appellant

### v.

### ADVANCED FREIGHT DYNAMICS, LLC, Appellee

---

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2018-17337**

---

### MEMORANDUM OPINION

In this interlocutory appeal, Fitzgerald Truck Parts and Sales, LLC, a Tennessee limited liability company, appeals the trial court's order denying its special appearance. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7). Fitzgerald Truck complains the trial court erred because its contacts with Texas are insufficient to subject it to the jurisdiction of Texas courts. Because we hold that Fitzgerald Truck purposefully established minimum contacts with Texas through the contacts of an independent sales agent, we affirm the trial court's order.

# I.    BACKGROUND

Fitzgerald Truck is a licensed motor vehicle dealer that sells gliders—refurbished commercial trucks—assembled by Fitzgerald Glider Kits, LLC.[1] Fitzgerald Truck is based in rural Tennessee. It has neither employees nor property in Texas and is not authorized to do business here. Fitzgerald Truck maintains a national website and sells glider trucks all over the country.

Steve Lyons, the owner of appellee Advanced Freight Dynamics, LLC was interested in purchasing a glider truck from Fitzgerald Truck in 2016. From Fitzgerald Truck's website, he found contact information for Fitzgerald Truck's Texas sales representative—Steve Cates. Lyons initiated contact with Cates via email requesting information on glider trucks using Cates's "@fitzgeraldtrucksales.com" email address. Cates was an independent contractor, engaged to sell trucks for Fitzgerald Truck through Fitzgerald Peterbilt III, LLC, a Peterbilt dealership in Alabama. Though Cates had contact with Fitzgerald Truck employees from time to time, he primarily worked through and reported to Marty Eagle, an employee of Fitzgerald Peterbilt III, LLC. Cates was given access to Fitzgerald Truck's inventory database, truck photos, forms and its customer relationship management system (Salesforce).

In 2017, Cates sent a marketing promotion to Lyons, who responded and expressed renewed interest in buying a glider truck on behalf of Advanced Freight. Cates met with Lyons in the Houston area at least once to discuss gliders, though Lyons testified three separate in-person meetings occurred. In September 2017, Advanced Freight signed a sales order for purchase of a truck and sent a deposit by wiring the funds directly to Fitzgerald Truck in Tennessee. The truck selected by

---

[1] Fitzgerald Glider Kits, LLC is not a party to this appeal. It filed a special appearance in the trial court, which was granted and has not been challenged on appeal.

Advanced Freight was to include a "CAT authorized Rebuilt C15 550HP, 1850 Torque" engine covered by a four-year unlimited mileage warranty through "CAT."

Several weeks later, Lyons traveled to Tennessee to pick up the truck at the Fitzgerald Truck plant. Lyons, on behalf of Advanced Freight, signed a bill of sale and related documents. The bill of sale reiterated the specifications from the sales order that the truck contained a "CAT authorized rebuilt" engine with a four-year warranty and identified the serial number of the engine.

In March 2018, Advanced Freight filed suit in Harris County, Texas against Fitzgerald Truck, asserting various contract and tort causes of action premised on allegations that Fitzgerald Truck breached its contract with Advanced Freight because (1) the truck did not have the engine and warranty identified in the sales order and bill of sale and (2) Fitzgerald Truck misrepresented the truck's engine and/or warranty. Advanced Freight asserted that Fitzgerald Truck purposefully availed itself of the privileges and benefits of conducting business in Texas by engaging Steve Cates as its agent and salesman to sell vehicles on behalf of Fitzgerald Truck in Texas. Fitzgerald Truck filed a special appearance and the parties conducted jurisdictional discovery, including written discovery and depositions. After a hearing in March 2019, the trial court denied Fitzgerald Truck's special appearance.[2] This accelerated interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (authorizing interlocutory appeal).

---

[2] The trial court signed an order on Fitzgerald Truck's special appearance on April 18, 2019, and an order on Fitzgerald Truck's amended special appearance on April 22, 2019. Because Fitzgerald Truck's amended special appearance took the place of the prior pleading, for purposes of this appeal we consider only the trial court's order denying Fitzgerald Truck's amended special appearance. Tex. R. Civ. P. 65.

## II.    GOVERNING LAW

### A.    Standard of review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions of fact in order to decide the issue. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not state findings of fact and conclusions of law with its ruling on a special appearance, all findings necessary to support the ruling and supported by the evidence are implied, although the sufficiency of the record evidence to support those findings may be challenged on appeal. *BMC Software,* 83 S.W.3d at 795.

Evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A "legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id*. A legal-sufficiency challenge will be sustained if the record reveals that evidence offered to prove a vital fact is no more than a scintilla. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014). The factfinder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Keller*, 168 S.W.3d at 819.

In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A court of appeals can set aside the finding only if it is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Id*. at 407. We may not substitute our own judgment for that of the factfinder or pass on the credibility of witnesses. *Id*.

4

A trial court should resolve a party's special appearance based on the pleadings, any stipulations between the parties, affidavits and attachments filed by the parties, relevant discovery, and any oral testimony put forth before the court. Tex. R. Civ. P. 120a(3).

## B.    Exercise of personal jurisdiction

The broad "doing business" language in the Texas long-arm statute allows the exercise of personal jurisdiction to "reach[ ] as far as the federal constitutional requirements of due process will permit." *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977) (interpreting former Revised Statutes art. 2031b, Act of Mar. 18, 1959, 56th Leg., R.S., ch. 43, § 4, 1959 Tex. Gen. Laws 85, 85–86) (amended 1979) (current version at Tex. Civ. Prac. & Rem. Code § 17.042). Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A nonresident defendant's minimum contacts can create either general or specific jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three components to the "purposeful availment" inquiry. *Id*. at 785. First, the relevant contacts are those of the defendant, not the unilateral activity of another party or a third person. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Second, the contacts must be purposeful rather than random, fortuitous, isolated, or attenuated. *Id*. Third, the defendant must seek some benefit, advantage, or profit by availing itself of the

jurisdiction. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

A trial court has specific jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state are purposeful and (2) the cause of action arises from or relates to those contacts. *Burger King*, 471 U.S. at 472. In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction is established when the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Id*. at 414 n.8. The nonresident defendant must take action that is purposefully directed at the forum state. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007). To determine whether the nonresident defendant purposefully directed action toward Texas, we examine the nonresident defendant's conduct indicating an intent or purpose to serve the Texas market. *Id*. When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are isolated or sporadic. *TV Azteca*, 490 S.W.3d at 37.

## C. Burden of proof

In a special appearance, the plaintiff and the defendant bear shifting burdens of proof. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding

6

burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id*. At the special-appearance stage, we must take the plaintiff's allegations as true. *See Moki Mac*, 221 S.W.3d at 585. A defendant can negate jurisdiction on either a factual or a legal basis. *Kelly*, 301 S.W.3d at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. Or the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id*. If the defendant meets its burden of negating all alleged bases of personal jurisdiction, then the plaintiff must respond with evidence "establishing the requisite link with Texas." *See id*. at 660.

Once the court concludes that the defendant has sufficient minimum contacts with the state to establish personal jurisdiction, the defendant bears the burden of establishing that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *See Burger King,* 471 U.S. 477–78; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C*., 815 S.W.2d 223, 231 (Tex. 1991).

### III.   ANALYSIS

Fitzgerald Truck argues the trial court erred in denying its special appearance because: (1) Fitzgerald Truck lacks sufficient contacts with Texas to confer specific jurisdiction over it; (2) the Texas contacts of Steve Cates cannot be attributed to it because Cates had neither actual or apparent authority to act as its agent; and (3) forcing Fitzgerald Truck to defend itself in Texas would violate traditional notions of fair play and substantial justice.

Through the actions of Steve Cates—Fitzgerald Truck's Texas agent— Advanced Freight argues that (1) Fitzgerald Truck met the requirements for establishing purposeful availment and (2) Cates's contacts with Advanced Freight

7

in Texas are substantially connected to the operative facts of the lawsuit. Advanced Freight argues the following evidence supports the court's exercise of personal jurisdiction over Fitzgerald Truck:

- Fitzgerald Truck designated Steve Cates, a Texas resident, as its sales agent to set up a marketing channel in Texas;

- Fitzgerald Truck provided Cates with a Fitzgerald Truck email address "@fitzgeraldtrucksales.com" in order to correspond with customers;

- Cates's email signature read "Glider Sales, Texas;"

- Fitzgerald Truck set up a Facebook page for Cates;

- Fitzgerald Truck provided Cates with access to its customer relationship management software (Salesforce) system;

- Fitzgerald Truck provided Cates with access to its Google Drive, which contained its inventory information, forms and company documents;

- Cates twice took Steve Lyons, owner of Advanced Freight, to lunch in the Houston area on behalf of Fitzgerald Truck;

- As Fitzgerald Truck's agent, Cates met with Lyons on a third occasion in Texas;

- Cates, as sales representative for Fitzgerald Truck, solicited Advanced Freight;

- Cates sent numerous e-mails and SMS text messages to Advanced Freight;

- Fitzgerald Truck directed and accepted Advanced Freight's transfer of money drawn on a Texas bank; and

- Fitzgerald Truck promoted and benefitted from Texas sales, selling approximately 6% of its gliders to Texas-based individuals or companies.

Both parties agree that the trial court's exercise of personal (specific) jurisdiction over Fitzgerald Truck depends on Steve Cates and his contacts with Advanced Freight in Texas. Therefore, we must first determine whether Cates was an agent of Fitzgerald Truck.

8

## A. Was Steve Cates an agent of Fitzgerald Truck?

Although the trial court did not expressly find that Cates was Fitzgerald Truck's agent or employee, we presume the trial court impliedly found all facts necessary to support the judgment if supported by legally and factually sufficient evidence. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Therefore, we construe Fitzgerald Truck's argument that it is not subject to specific jurisdiction in Texas as an attack on the legal and factual sufficiency of the evidence to support the trial court's implied findings that Cates was acting as an agent of Fitzgerald Truck. *See Walker Ins. Servs. v. Bottle Rocket Power Corp.*, 108 S.W.3d 538, 549 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The Texas contacts of agents or employees are attributable to their nonresident principals. *Huynh v. Nguyen*, 180 S.W.3d 608, 620 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also Burger King*, 471 U.S. at 480 n.22 (stating that commercial activities carried out on a party's behalf "may sometimes be ascribed to the party," but declining to "resolve the permissible bounds of such attribution"). Absent actual or apparent authority, an agent cannot bind a principal. *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) ("An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority.")). We must determine whether there is legally- and factually-sufficient evidence supporting a relationship between Fitzgerald Truck as principal and Cates as agent for purposes of determining jurisdiction.

### 1. Actual authority

Actual authority denotes authority that the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of

9

ordinary care allows the agent to believe himself to possess. *Petroleum Workers Union of the Republic of Mexico v. Gomez*, 503 S.W.3d 9, 25 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see generally Gaines*, 235 S.W.3d at182.

Fitzgerald Truck insists Cates was not, at any time, an agent acting on its behalf.[3] Fitzgerald Truck describes Cates as an independent contractor who occasionally provided sales leads.[4] Fitzgerald Truck, as evidence, provided an affidavit from Tommy Fitzgerald, its Vice President of Sales and Marketing:

> Mr. Cates was an independent contractor for companies other than [Fitzgerald Truck]. He did not work for [Fitzgerald Truck]. Mr. Cates has never been an employee of [Fitzgerald Truck], and . . . [Fitzgerald Truck] has [n]ever made any payment of any kind to him. Mr. Cates operated autonomously from [Fitzgerald Truck]. The companies did not manage or control Mr. Cates, and Mr. Cates did not have the authority to bind [Fitzgerald Truck] in contract. [Fitzgerald Truck] did not train him, give instructions or directions to him, or supply him with marketing materials. Mr. Cates's glider-related activities were managed and controlled by Marty Eagle . . . in 2017 in his capacity as an employee of Fitzgerald Peterbilt III, LLC.

In his deposition, Cates largely supported that position. He testified that he was an independent contractor and worked for himself. He reported to Marty Eagle, an employee of Fitzgerald Peterbilt III, which was a Peterbilt truck dealership in Alabama. He further explained that he had little contact with employees of Fitzgerald Truck, and that he had no ability to negotiate price outside of the parameters set by Fitzgerald Truck in its system. Cates also testified that he was paid a flat commission for each truck he sold by Fitzgerald Peterbilt III.

---

[3] In its appellate briefing, Fitzgerald Truck states that it never communicated with Cates, and its management did not even know he existed. The evidence in the record, however, clearly establishes that a variety of Fitzgerald Truck employees communicated with Cates about the subject truck, even if upper management did not.

[4] For purposes of this appeal, we assume without deciding that Cates was an independent contractor and not an employee of Fitzgerald Truck.

However, Cates testified that he was provided with a Fitzgerald Truck email address, as well as access to the company inventory, company forms and documents and the company's Salesforce system.

The evidence shows that Fitzgerald Truck did not control the means and details of the process by which Cates performed any tasks or solicited customers. In the record, there is no evidence that supports a finding that Fitzgerald Truck gave Cates authority to bind it or that he acted as its agent. Thus, we conclude no evidence of actual authority on which an agency relationship between Cates and Fitzgerald Truck could have been based.

### 2. Apparent authority

There is evidence that Cates possessed *apparent* authority on behalf of Fitzgerald Truck. To establish apparent authority, one must show that a principal either knowingly permitted an agent to hold himself out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority. *See NationsBank v. Dilling,* 922 S.W.2d 950, 952–53 (Tex. 1996). We look to the acts of the principal and ascertain whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *Nguyen*, 180 S.W.3d 623. Only the conduct of the principal may be considered; representations made by the agent of his authority have no effect. *Id.* Furthermore, the principal either must have affirmatively held the agent out as possessing the authority or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Id.*; *Dilling*, 922 S.W.2d at 953; *see also Walker Ins. Servs.*, 108 S.W.3d at 551–52 (apparent authority when independent contractor handled most of contract negotiations and his efforts were "accepted and ratified" by power company); *PanAmerican Operating v. Maud Smith Estate*, 409 S.W.3d 168, 175–76 (Tex.

11

App.—El Paso 2013, pet. denied) (landman engaged as independent contractor was found to have apparent authority when he corresponded with landowners using company email and was given tools necessary to negotiate).

Here, a number of acts by Fitzgerald Truck suggest that a reasonably prudent person would believe Cates possessed the authority to act on Fitzgerald Truck's behalf. First, it is undisputed that Fitzgerald Truck listed Cates on its website as a Texas sales representative. Though Fitzgerald Truck's Vice President, Tommy Fitzgerald, testified that he was never aware of Cates's inclusion on the website, the company was undisputedly holding out Cates as a sales representative for the company to the public. Fitzgerald Truck also provided Cates with a "@fitzgeraldtrucksales.com" email address, as well as access to its company documents and sales data.[5] He was able to generate company sales orders, search company inventory and submit special requests for customers. Not only was the sales order for the truck generated by Cates on a company form with the company logo, the sales order does not reflect that it was allegedly created by an outside company, dealership or agent. It also lists "Steve" as the salesperson, along with all of Cates's contact information.

Lyons, the owner of Advanced Freight, testified that during his negotiation for the purchase of the subject truck he was never made aware of the fact that Cates was not an employee or agent of Fitzgerald Truck. This was borne out in the correspondence between Lyons and Cates that is included within the record. Cates

---

[5] Advanced Freight also references the fact that Fitzgerald Truck set up a Facebook page for Cates. However, it is unclear from the evidence who set up the Facebook page, as Cates attributed the page to "some outside marketing team" for Fitzgerald Truck. In his deposition, Tommy Fitzgerald testified he was unaware of Cates's Facebook page and that he highly discouraged the use of any Facebook pages other than the company's primary page. It is undisputed that Cates's email signature contained a link to his "Fitzgerald Truck" Facebook page, and it is also undisputed that Fitzgerald Truck never asked Cates to remove the link.

facilitated the sale by communicating with Fitzgerald Truck employees regarding production timing, changing the sales order to reflect the inclusion of a different engine and requesting Fitzgerald Truck employees generate purchase orders for accessories to be included in Advanced Freight's financing. Fitzgerald Truck sent Cates an email notification when the truck was available advising that Cates needed to notify the customer and schedule the vehicle pickup. Cates acted as the representative of Fitzgerald Truck to Advanced Freight at least in the respects we have described, a far cry from simply passing along a sales lead.

The evidence in the record reflects Fitzgerald Truck's awareness and endorsement of Cates's sales efforts. The fact that Cates was given a company email address and access to the company's inventory and Salesforce system reflects Fitzgerald Truck's decision to ensure customers interacting with Steve Cates had the same experience and impression as if they were working with an employee or authorized agent of the company. *See Dilling*, 922 S.W.2d at 953 (apparent authority established when principal knowingly permitted agent to hold itself out as having authority). From all outward appearances, Cates was acting on behalf of Fitzgerald Truck, and nothing in the record suggests Fitzgerald Truck discouraged that appearance. We conclude there is legally-sufficient evidence supporting a relationship between Fitzgerald Truck as principal and Cates as agent for purposes of determining jurisdiction.

We turn now to our factually-sufficiency review. The evidence supporting Fitzgerald Truck's argument that Cates was not an agent, and had no apparent authority comes from affidavits supplied by Tommy Fitzgerald and Marty Eagle. Tommy Fitzgerald stated that Cates was an independent-contractor salesman, who was never an employee of Fitzgerald Truck and was never paid directly by Fitzgerald Truck. He also emphasized that Cates did not have actual authority to

bind Fitzgerald Truck "in contract, execute a sale, or negotiated the sale of its products outside pricing parameters set by the company's management." Fitzgerald Truck relies heavily on the fact that Cates was not managed or controlled by Fitzgerald Truck, and instead he received his authority from Marty Eagle, an employee of Peterbilt III. An affidavit from Marty Eagle supports this assertion.

Fitzgerald Truck emphasizes that the sales order submitted by Cates did not bind the company and that it had the power to accept or reject sales orders as it saw fit. However, the sales order generated by Cates, signed by Advanced Freight and ultimately accepted by Fitzgerald Truck, does not warn the customer about the conditional nature of the sales order. Rather, the sales order states "Your truck will be assembled from this sales order. Please make sure all items are correct. If changes need to be made, please contact your sales rep . . . No truck will be assembled without a signed sales order." Cates also testified that when he generated sales orders, his designation of a specific truck in the sales order would effectively "tie up" or reserve a truck in Fitzgerald Truck's inventory. The evidence established that Cates was instrumental in retaining Advanced Freight as a sales lead and negotiating Advanced Freight's purchase of a glider truck. The evidence also established that Fitzgerald Truck was aware of Cates's involvement and provided Cates with company resources to complete and negotiate sales.

Though Fitzgerald Truck and its management may have believed that Cates was just an independent contractor bringing sales leads to the company, the test for apparent authority is whether the acts of the principal would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *See Nguyen*, 180 S.W.3d 623. Considering the foregoing, Fitzgerald Truck's assertions that Cates was not an agent are not sufficient to defeat the evidence of apparent authority. Reviewing all

14

the evidence, we conclude there is legally- and factually-sufficient evidence supporting a relationship between Fitzgerald Truck as principal and Cates as agent for purposes of determining jurisdiction.

**B.     Did the trial court properly conclude that it could exercise personal jurisdiction?**

Having determined that Cates was indeed an agent of Fitzgerald Truck with apparent authority, we next consider whether Fitzgerald Truck, through its own actions or those of its agent, purposefully established minimum contacts with Texas. *See Burger King*, 471 U.S. at 474 (noting that "the constitutional touchstone remains whether the [nonresident] defendant purposefully established 'minimum contacts' in the forum State") (citing *Int'l Shoe Co.*, 326 U.S. at 316).

Fitzgerald Truck argues that because Advanced Freight takes the position that Cates did not specifically make misrepresentations, rather Cates made misrepresentations on behalf of Fitzgerald Truck, Cates's involvement is irrelevant to the jurisdictional analysis. This argument is misplaced. Fitzgerald Truck has not disputed that the specifications for the truck represented by Cates to Advanced Freight were taken from its inventory and/or its company information. Because we have already determined that Cates had apparent authority to act on behalf of Fitzgerald Truck, the representations made in this respect by Cates were made on behalf of Fitzgerald Truck and attributable to it. *See Nguyen*, 180 S.W.3d at 620; *see also Burger King*, 471 U.S. at 480 n.22.

**1.     Purposeful contacts with Texas**

Fitzgerald Truck publicly advertised Cates as its sales representative for Texas. It was not by chance that Lyons found Cates's contact information. Advanced Freight contacted Cates because his contact information was listed on Fitzgerald Truck's website as the contact for Texas sales. At the time, Cates was a

15

resident of Texas and an independent contractor, engaged to sell trucks and develop sales leads for Fitzgerald Truck in Texas. Cates, on behalf of Fitzgerald Truck, solicited Advanced Freight and met with its owner in person. Given that Cates's contacts with Advanced Freight in Texas are attributable to Fitzgerald Truck, we conclude that Fitzgerald Truck had purposeful contacts with Texas. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). Additionally, Fitzgerald Truck sought benefit and profit in the state. *See Michiana*, 168 S.W.3d at 785. Utilizing the services of Cates allowed Fitzgerald Truck to generate new sales and solicit business in Texas. Far from seeking to avoid Texas, Fitzgerald Truck sought to serve the Texas market. *See Moki Mac*, 221 S.W.3d at 577.

### 2. Substantial connection between Texas and operative facts

Fitzgerald Truck next argues that even if Cates were its agent that (1) there was no evidence Fitzgerald Truck made any representations in Texas about the glider truck's engine, through Cates or otherwise, and (2) even if such representations had been made in Texas, they would not be substantially related to the operative facts of the litigation. Fitzgerald Truck attempts to frame Advanced Freight's claims in this lawsuit as concerning solely the characteristics of a truck assembled and delivered in Tennessee and a contract executed and performed in Tennessee. However, Fitzgerald Truck's arguments are not persuasive.

We first address whether there is any evidence in the record of representations made in Texas about the glider truck's engine. Fitzgerald Truck specifically claims that Advanced Freight relied on a representation made in the bill of sale as the basis for its claims, which Fitzgerald Truck alleges has no connection to Texas. Fitzgerald Truck reaches this conclusion by determining that the sales order, prepared by Cates in Texas, did not contain any representations because it was an offer, not a contract. And because Fitzgerald Truck asserts the

16

sales order was simply an offer to purchase a truck by Advanced Freight with certain specifications, it could not therefore contain representations from Fitzgerald Truck. However, the evidence demonstrates the opposite was true. The sales order was an offer prepared and sent by a sales representative of Fitzgerald Truck to Advanced Freight to sell a truck with certain specifications at a specific price. The sales order was printed on a Fitzgerald Truck form. It contains an order number and order date and requires that the customer, here Advanced Freight, sign the sales order with the following admonition "Approval Signature Required to Assemble Please Read!" Advanced Freight accepted the offer by signing the sales order.[6] *See* Tex. Bus. & Com. Code Ann. § 2.204 ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."); Tex. Bus. & Com. Code Ann. § 2.206 ("An offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances"). Fitzgerald Truck recognized the existence of this contract through its conduct in preparing the truck for delivery, accepting Advanced Freight's funds and delivering the truck.[7] *See id*. § 2.204. Therefore, the sales order was a contract

---

[6] Because the transaction here involved a sale of goods, the Uniform Commercial Code ("UCC"), as adopted in the Business and Commerce Code, applies. *See* Tex. Bus. & Com. Code Ann §§ 2.101–.725; *see also Medical City Dallas, Ltd., v. Carlisle Corp*., 251 S.W.3d 55, 59 n.3 (Tex. 2008). Chapter 2 broadly defines "goods" to mean things that are moveable at the time of identification to the contract for sale. *See* Tex. Bus. & Com. Code Ann.§ 2.105(a).

[7] The bill of sale, relied on by Fitzgerald Truck as the only contract at issue, does not contact a merger or integration clause affecting consideration of the sales order. There is no indication in the bill of sale that it is intended to be the final expression of an agreement. *See* Tex. Bus. & Com. Code Ann. § 2.202 (final written expression); *see generally Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am*., 341 S.W.3d 323, 334 (Tex. 2011) (standard merger clause "achieves the purpose of ensuring that the contract at issue invalidates or supersedes any previous agreements"). The sales order also does not indicate that it is conditional or anything other than a contract. Instead, it states: "Your truck will be assembled from this sales order. Please make sure all items are correct. If changes need to be made, please contact your sales rep . . . No truck will be assembled without a signed sales order."

and contained a clear representation that the subject truck, identified by its vehicle identification number, would include a "CAT" authorized-rebuilt engine with a four-year warranty. Evidence in the record also reflects that Cates emailed Advanced Freight various Fitzgerald Truck documents containing information about warranties provided in-house through Fitzgerald Truck, as well as manufacturer warranties through Caterpillar. Therefore, Fitzgerald Truck's argument that no representations were made in Texas cannot be supported based on the evidence in the record.

We next address Fitzgerald Truck's contention that even if such representations had been made in Texas, they would not be substantially related to the operative facts of the litigation. Only when there is a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation may a trial court exercise specific jurisdiction over the nonresident. *Moki Mac*, 221 S.W.3d at 585. Fitzgerald Truck likens the jurisdictional allegations here to those in *Moki Mac*, because it claims the underlying lawsuit is based on the bill of sale executed in Tennessee and not the contacts between Cates and Advanced Freight in Texas. *Id*. However, Fitzgerald Truck misreads *Moki Mac* to stand for the proposition that "allegations of misrepresentations made in Texas are not enough to support specific jurisdiction where the principal alleged tort occurred outside of Texas." In *Moki Mac*, the plaintiffs' son was fatally injured while taking part in a river-rafting excursion guided by Moki Mac in Arizona. *Id*. at 573. The plaintiffs filed suit in Texas and alleged specific jurisdiction over Moki Mac because Moki Mac made misrepresentations in its Texas solicitations. *Id*. However, the supreme court found that the relationship between Moki Mac's promotional representations in Texas and the operative facts of the litigation were too attenuated to satisfy due-process concerns. *Id*. at 588. The facts in the instant

case are distinguishable, as the representations made to Advanced Freight in the sales process, and in the sales order, regarding the engine and engine warranty are substantially related to Advanced Freight's claims in this lawsuit that the engine was not what was represented.

The arguments made by Fitzgerald Truck ignore that the sales order contains identical specifications for the engine as the bill of sale. The bill of sale specifies that the truck's engine should have been a Caterpillar or "CAT" authorized-rebuilt C15 550HP, 1850 torque engine. The bill of sale further specifies the engine should also have been covered by a four-year unlimited warranty through Caterpillar. The only difference between the sales order and the bill of sale, with respect to the engine, is that Fitzgerald Truck added the serial number of the engine to the bill of sale where the sales order states "TBD." It is clear representations were made to Advanced Freight about the engine and its warranty during the sales process and in the sales order. The bill of sale simply carries forward the specifications represented to Advanced Freight in the sales order. Thus, Cates's representations of the engine to be installed in the truck, along with his preparation of the sales order stating that Advanced Freight would receive a four-year warranty on the engine from "CAT," were made in Texas and bear a substantial connection to the operative facts of this litigation. *See Siskind v. Villa Found. For Educ., Inc.*, 642 S.W.2d 434, 437 (Tex. 1982) (enrollment for out-of-state school was executed in Arizona, but was "actively and successfully solicited" in Texas).

However, even if we were to conclude that the manufacture and sale of the truck were completed in Tennessee and therefore Advanced Freight's claims did not strictly arise out of Fitzgerald Truck's Texas contacts, those facts are not enough to preclude specific jurisdiction in this case. In a recent opinion, the United States Supreme Court reiterated the rule that a suit must "arise out of or relate to

19

the defendant's contacts with the forum," but clarified that "proof that the plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). In these companion cases, the Supreme Court addressed an automobile manufacturer's argument that no specific jurisdiction existed over plaintiffs' product-liability claims because the vehicles at issue were not designed, manufactured, or sold in Montana or Minnesota and, therefore, there was not a sufficient connection between its activities in the forum states and the plaintiffs' claims. *Id*. 1022. The Court rejected this argument stating that it has never required a causal connection to support specific jurisdiction. *Id*. at 1026. "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id*. The Court held that the automobile manufacturer's extensive activities in Montana and Minnesota (promotion, sale and service) had a "close enough" connection with the plaintiffs' claims (resident's in-state injury from a vehicle model sold in the state) to support specific jurisdiction. *Id*. at 1032. Similarly, Advanced Freight's claims, at a minimum, "relate to" Fitzgerald Truck's contacts with Texas (promotion and sale of trucks to Texas residents), which supports specific jurisdiction.

**C.    Was the exercise of personal jurisdiction consistent with traditional notions of fair play and substantial justice?**

Though we have determined that Fitzgerald Truck has sufficient minimum contacts with Texas to support specific personal jurisdiction, we must also determine whether exercising that jurisdiction comports with traditional notions of fair play and substantial justice. *See Bell*, 549 S.W.3d at 559; *see also Peredo v. M. Holland Co.*, 310 S.W.3d 468, 476 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (court considers whether exercise of jurisdiction offends traditional notions of fair play and substantial justice only if minimum contacts are established). In

20

making this determination we consider the following factors, when appropriate:

> (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Guardian Royal Exch.*, 815 S.W.2d at 232. The defendant bears the burden of presenting a compelling case that the presence of some consideration would render the exercise of jurisdiction over it unreasonable. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879 (Tex. 2010). "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Moncrief Oil Int'l. Inc., v. OAO Gazprom*, 414 S.W.3d 142, 154–55 (Tex. 2013).

Fitzgerald Truck asserts that defending itself in Texas is unduly burdensome because it is a Tennessee limited liability company without any minimum contacts with Texas. Fitzgerald Truck also claims that its business has deteriorated financially and that presenting witnesses in Texas would work substantial financial hardship and disrupt its business. Although it would be a burden on Fitzgerald Truck for its representatives to travel to Texas to participate in litigation, "the same can be said of all nonresidents" and "[d]istance alone cannot ordinarily defeat jurisdiction." *Id.* at 155; *Guardian Royal Exch.*, 815 S.W.2d at 231 (noting that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity"). Fitzgerald Truck may be burdened by having to defend itself in litigation, which would happen regardless of which forum it was pending, but Fitzgerald Truck has not demonstrated that this burden is an unreasonable one. *See Hoagland v. Butcher*, 474 S.W.3d 802, 816 (Tex. App.—Houston [14th Dist.]

21

2014, no pet.).

Contrary to Fitzgerald Truck's position that Texas has little interest in a dispute concerning representations made in Tennessee by a Tennessee company, Texas has an "obvious interest in providing a forum for resolving disputes involving its citizens, particularly those disputes in which the defendant allegedly committed a tort in whole or in part in Texas." *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.); *see also Moncrief Oil*, 414 S.W.3d at 155. Fitzgerald Truck also argues that the burden on Advanced Freight to litigate this case in Tennessee would be minimal, because Advanced Freight runs a national trucking operation. However, the fact that Advanced Freight is an over-the-road trucking company that operates trucks outside of its home state does not justify the conclusion there would be minimal burden on Advanced Freight to litigate in Tennessee. There is no question it would be more convenient for Advanced Freight to litigate the case in its home state where it alleges the torts occurred. *See Moncrief Oil*, 414 S.W.3d at 155.

Fitzgerald Truck also argues the interstate judicial system would be best served if the Texas courts did not exercise jurisdiction because (1) the overwhelming majority of witnesses and evidence are located in Tennessee and (2) Tennessee law will likely govern the dispute. However, Fitzgerald Truck relies on no authority or evidence to support these arguments. And because the parties have already conducted extensive discovery in this case and the trial court is familiar with the case, it promotes judicial economy to litigate Advanced Freight's claims in Texas. *Moncrief Oil*, 414 S.W.3d at 155. Further, Steve Cates—a crucial witness—is a current resident of Texas. The process of ensuring the attendance of Cates at a trial in Tennessee would be more complicated and involve greater expense than if the parties litigate the matter in Texas. Therefore, Fitzgerald Truck

has not made a compelling case that it would be unreasonable for the court to exercise personal jurisdiction in this case. *See Hoagland*, 474 S.W.3d at 816.

On balance, this is not one of the rare cases in which exercising jurisdiction does not comport with fair play and substantial justice. *Cf. Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114–16 (1987) (exercising jurisdiction was not fair when only remaining claim was for indemnification by Taiwanese corporation against Japanese corporation); *Guardian Royal Exch.*, 815 S.W.2d at 233 (exercising jurisdiction was not fair when, in suit between insurers, decedent's family and original defendant had no interest in outcome and insurers were not Texas consumers or insureds). We conclude that exercising personal jurisdiction over Fitzgerald Truck in Texas would not offend traditional notions of fair play and substantial justice. Accordingly, we hold that the trial court did not err by denying Fitzgerald Truck's special appearance and we overrule Fitzgerald Truck's sole issue.

## IV. CONCLUSION

We overrule Fitzgerald Truck's sole issue on appeal and affirm the trial court's order denying Fitzgerald Truck's special appearance.



/s/    Charles A. Spain
       Justice


Panel consists of Justices Jewell, Spain, and Wilson.