Miguel **PEREDO**, Appellant,

v.

**M. HOLLAND COMPANY** and Antonio Palazuelos, Appellees.

No. 14–08–01032–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 2, 2010.

---

Constance H. Pfeiffer, Houston, for appellant.

Jesse R. Castillo, San Antonio, Edward B. Adam Jr., Katherine D. Mackillop, Houston, for appellees.

Panel consists of Justices ANDERSON and BROWN.

## OPINION

JOHN S. ANDERSON, Justice.

A Mexican corporation brought suit in Harris County against a vendor and two of the vendors' Texas employees. The vendor counterclaimed against the Mexican corporation's president, who resides in California, and the trial court denied the nonresident counterdefendant's special appearance. Because the evidence does not support the trial court's exercise of personal jurisdiction over the nonresident, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Since approximately 2005, Grupo Cuadro, S.A. de C.V. ("Cuadro"), a Mexican corporation that manufactures plastic "shrink wrap" and other plastic wrapping and storage products, has purchased resin from M. Holland Company (Holland). As Cuadro asserted in its pleadings, Holland's corporate offices are in Illinois, but its international sales are handled through its Houston office, and the sales to Cuadro were initiated in Texas. Cuadro also sent its purchase orders to the Houston office, and Holland's invoices to Cuadro were sent from the Houston office. Holland's products were delivered and transferred to Cuadro in Laredo, Texas.

According to Cuadro, Holland eventually began selling Cuadro a more expensive resin that did not perform as well, and Cuadro's customers returned the products made from that resin. On March 9, 2007, Cuadro filed suit in Harris County against Holland and two of Holland's international sales representatives, Antonio Palazuelos and John Crowley, each of whom resides in Texas. According to Cuadro, the defendants violated the Texas Deceptive Trade Practices—Consumer Protection Act, tortiously interfered with actual and prospective contracts and business relations, and committed breach of contract, common-law fraud, commercial disparagement and defamation, breach of the duty of good faith and fair dealing, and breaches of the implied warranties of merchantability and fitness for a particular purpose. Cuadro additionally asserted several causes of action under Mexican law.

After the case had been pending for more than sixteen months, Holland filed a third-party petition on July 16, 2008 in which it asserted claims of fraud and fraudulent inducement against Cuadro's president, California resident Miguel Angel Peredo Luna ("Peredo"). Peredo and his siblings formerly owned Cuadro, but by the time of Peredo's deposition, ownership had been transferred to Peredo's wife and mother. According to Holland, Peredo repeatedly made material, false representations to Holland in 2006 and 2007 about past payments and false promises of future payments. These representations were made by Peredo to secure the continuation of sales and shipping of resin to Quadro in reliance on such statements, to continue to sell and ship resins to Cuadro. Holland further alleged that despite these representations, Cuadro had failed to pay for some of the resin shipped by Holland in 2006.

Peredo filed a special appearance which the trial court denied, and the court stayed further proceedings against Peredo during the pendency of this interlocutory appeal.

## II. Issue Presented

In the sole issue presented, Peredo challenges the trial court's denial of his special appearance.

## III. Standard of Review

■■ The existence of personal jurisdiction is a question of law. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident within the provisions of the long-arm statute. *Id.* at 793. The nonresident defendant then bears the burden of proof to negate all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.

2007). On appeal, we consider all of the evidence before the trial court on the question of jurisdiction. *Fish v. Tandy Corp.,* 948 S.W.2d 886, 891 (Tex.App.-Fort Worth 1997, writ denied). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software,* 83 S.W.3d at 795.

## IV. Governing Law

■■ Because the personal jurisdiction of Texas courts extends as far as the federal constitutional requirements of due process will permit, we rely on both state and federal precedent in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *Id.* (quoting *U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977)). State statutory and federal due-process requirements are satisfied if (a) the nonresident has minimum contacts with Texas, and (b) our exercise of personal jurisdiction over the nonresident does not offend "traditional notions of fair play and substantial justice." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

### A. Specific Jurisdiction

There are two types of personal jurisdiction: specific and general. On appeal, Peredo challenges only the existence of specific jurisdiction and represents that Holland at some point conceded that general jurisdiction does not exist. At oral argument, Holland agreed that only the existence of specific jurisdiction ultimately was argued to and ruled upon by the trial court. We therefore address only the

question of whether the record supports the trial court's exercise of specific jurisdiction.

▮ Specific jurisdiction is dispute-specific, and it attaches when the plaintiff's cause of action arises out of or relates to the nonresident defendant's contacts with the forum state. *Conner v. ContiCarriers and Terminals, Inc.*, 944 S.W.2d 405, 410 (Tex.App.–Houston [14th Dist.] 1997). To invoke a state's specific jurisdiction, the defendant's activities must have been "purposefully directed" to the forum, *id.*, and there must be a substantial connection between the defendant's forum contacts and the operative facts of the litigation. *Moki Mac River Expeditions*, 221 S.W.3d at 585.[1]

## V. ANALYSIS

### A. Minimum Contacts

▮ The first due process requirement, that of sufficient minimum contacts, is satisfied if the nonresident defendant has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). The "purposeful availment" requirement ensures that a nonresident will not be haled into a foreign jurisdiction based on "'[t]he unilateral activity of those who claim some relationship'" with the defendant or as the result of "'random,' 'fortuitous,' or 'attenuated' contacts." *Id.*, 471 U.S. at 474–75, 105 S.Ct. at 2183 (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239–40); *Keeton v. Hustler Magazine,*

*Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

▮ To determine whether the nonresident defendant has purposefully availed itself of the privileges of conducting business within the State of Texas, we focus on three factors. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex.2005). First, we consider only each defendant's own actions. *Id.* Second, the acts of the defendant must be purposeful, rather than random, isolated, or fortuitous. *Id.* Third, the "defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* We do not consider any of a defendant's contacts in isolation, but instead apply these factors to all of the nonresident defendant's contacts with Texas. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 359 (Tex.1990). "[I]t is not the number, but rather the quality and nature of the nonresident defendant's contacts with the forum state that [are] important." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 n. 11 (Tex.1991).

#### 1. Peredo's Affidavit

▮ In support of his special appearance, Peredo presented uncontroverted evidence of the following facts:

- Peredo resides in California.
- He has never resided in Texas or maintained an office, place of business, agent, telephone listing, or bank account here.
- Peredo does not own, lease, or control any real or personal property in Texas.
- He has no Texas employees.
- He has never paid taxes in Texas.

---

1. Operative facts are those having principal relevance. *See* A DICTIONARY OF MODERN LEGAL USAGE, 620 (Bryan A. Garner, 2d ed., 1995).

- He does not advertise any business in Texas or provide any service here.
- He does not solicit business in Texas.
- Although he has met with Holland representatives in Illinois, California, and Mexico, he has never met with Holland representatives in Texas.
- He is not certain if any Holland representative was in Texas when the representative telephoned Peredo or received an email from him.
- He is the president of a California company and is needed in California on a daily basis to run that business.

Both in the trial court and on appeal, Holland responded to this evidence as follows:

In late 2006 and early 2007, because Cuadro fell grossly behind in its payment, M. Holland, through Antonio Palazuelos and later, other M. Holland employees, began contacting Miguel Peredo, on almost a daily basis, to inquire about the status of payments for resins allegedly forthcoming. .... In response to these inquiries, Peredo promised ... partial payment had been made and further payment would be forthcoming.

Many of these communications, including Peredo's false promises, were directed to Texas and Antonio Palazuelos.....

As a result of Peredo's communications with Antonio Palazuelos and others, M. Holland continued to conduct business with M. Holland [sic]. Antonio Palazuelos was primarily responsible for maintaining the business relationship....

Notwithstanding Peredo's promises of partial payment and future payment, payment was not forthcoming when promised, if ever....

These communications alone—namely, those communications directed to Texas and which gave rise to the claims of fraud—are sufficient to create specific jurisdiction under the purposeful availment test.[2]

Thus, in response to Peredo's evidence demonstrating that he did not establish minimum contacts with Texas, Holland appears to argue that a Texas resident established minimum contacts with him. This construction of Holland's jurisdictional theory is borne out by the evidence on which Holland relies.

### 2. Reply Emails

In support of its argument, Holland produced copies of several email exchanges, including ten emails from Peredo to Palazuelos over an eighteen month period.[3] Significantly, none of Peredo's email exchanges with Palazuelos were initiated by Peredo. To the contrary, each of Peredo's emails to Palazuelos is a reply to an email he received from Palazuelos.[4]

Such evidence is analogous to that presented in *Weldon–Francke v. Fisher*, 237 S.W.3d 789 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In that case, a New Hampshire attorney gave legal advice to Texas residents in New Hampshire and drafted

---

**2.** This language, taken from Holland's response in the trial court, is repeated almost verbatim in Holland's appellate brief.

**3.** Because we consider only the nonresident defendant's actions, *see Michiana*, 168 S.W.3d at 785, we do not consider the emails cited by Holland that were merely received by Peredo.

**4.** Palazuelos had multiple email addresses, and although at least one email from another Holland employee was sent to Palazuelos at an email address in which "houston" appeared as part of the domain name, the emails that Palazuelos sent to Peredo and to which Peredo responded do not include any geographic identifier in Palazuelos's email address.

documents concerning the transfer of their New Hampshire summer home to a trust. *Id.* at 794–95. The Texas residents and their Texas counsel later contacted the New Hampshire attorney through correspondence, facsimile, and telephone with inquiries about the trust, and the attorney responded in telephone calls and correspondence to the clients and their counsel in Texas. *Id.* at 795. The clients subsequently sued the New Hampshire attorney in Texas, and argued that specific jurisdiction was proper because the attorney performed tortious acts in her calls and letters to Texas. *Id.* at 797. We rejected that argument, and explained that because the attorney did not engage in purposeful contacts with Texas by rendering legal services to Texas residents in New Hampshire, she did not engage in purposeful contacts with Texas by responding to telephone calls and correspondence from Texas about that advice. *Id.*

Here, the evidence on which Holland relies is even more attenuated than that presented in *Weldon–Francke.* Like the attorney in that case, Peredo responded to inquiries from Texas, but unlike the attorney in *Weldon–Francke,* the subject of those inquiries was not his performance of a contract with a Texas resident; rather, the inquiries concerned payments to be sent to a company in Illinois by a Mexican corporation pursuant to a contract to which Peredo was not a party. As we stated in *Weldon–Francke,* the allegation that a nonresident committed a tort in the course of such communications is insufficient to overcome the nonresident's lack of purposeful contacts. *Id.* (citing *Michiana,* 168 S.W.3d at 788–92).

### 3. *Calls to a Mobile Telephone Number*

Holland also relies on an affidavit by Palazuelos in which he attests that his "email and mobile phone numbers are both Texas[-]based." He further attested as follows:

> 4. In connection with M. Holland's relationship with Grupo Cuadro, I frequently received telephone calls and emails from Miguel Peredo directed to me in Texas.
>
> 5. In the telephone calls and emails I received in Texas from Miguel Peredo, Mr. Peredo discussed and negotiated resin orders and pricing. Also in those telephone calls and emails made and sent by Miguel Peredo while I was in Texas, Mr. Peredo discussed Grupo Cuadro's payment terms with M. Holland; past due invoices with M. Holland; and when Grupo Cuadro would pay M. Holland for resins Grupo Cuadro had purchased. Miguel Peredo initiated many of these communications to me, and I also made phone calls and sent emails to Miguel Peredo while I was located in Texas.

But as the Texas Supreme Court explained in *Michiana,*

> [C]hanges in technology have made reliance on phone calls obsolete as proof of purposeful availment. While the ubiquity of "caller ID" may allow nonresidents to know a caller's telephone number, that number no longer necessarily indicates anything about the caller's location. If jurisdiction can be based on phone conversations "directed at" a forum, how does a defendant avail itself of any jurisdiction when it can never know where the other party has forwarded calls or traveled with a mobile phone?

*Michiana,* 168 S.W.3d at 791.

Moreover, we have previously stated that a nonresident does not establish minimum contacts simply by contracting with a Texas entity and engaging in numerous communications, by telephone or otherwise, with people in Texas concerning the

contract. *See Alenia Spazio, S.p.A. v. Reid,* 130 S.W.3d 201, 213 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (contracting with Texas entity and numerous telephone and facsimile communications with people in Texas relating to alleged contract do not establish minimum contacts); *see also TeleVentures, Inc. v. Int'l Game Tech.,* 12 S.W.3d 900, 908–10 (Tex. App.-Austin 2000, pet. denied) ("Minimum contacts may not be satisfied by merely engaging in communications with a Texas corporation during performance of a contract."). Here, neither of the parties to the contract is a Texas entity, and Peredo is not even a party to the contract; thus, his contacts with Texas concerning the contract between Cuadro and Holland are even less purposeful and more attenuated than those we have previously held insufficient to satisfy the minimum-contacts requirement.

### 4. *Content of Communications*

Holland also argues that the content of Peredo's communications with Palazuelos is sufficient to support specific jurisdiction. In support of this argument, Holland relied in the trial court on *Wien Air Alaska, Inc. v. Brandt,* in which the Fifth Circuit wrote, "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." 195 F.3d 208, 213 (5th Cir.1999).[5] But as we have previously stated, the "directed tort" rationale employed in *Wien* was rejected by the Texas Supreme Court in *Michiana. Proskauer Rose LLP v. Pelican Trading, Inc.,* No. 14–08–00283–CV, 2009 WL

242993, at *4 (Tex.App.-Houston [14th Dist.] Feb. 3, 2009) (mem.op.).

Moreover, the reasoning of the *Wien* court is based on facts that are readily distinguishable from those presented here. The statement quoted by Holland continues, "The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Wien,* 195 F.3d at 213. But here, the substance of Holland's claim is that the California president of a Mexican corporation made misrepresentations about when the corporation sent payments to a supplier in Illinois. The jurisdictional inquiry does not focus on the state in which the plaintiff relied on the alleged misrepresentation. *Michiana,* 168 S.W.3d at 789–91. Assuming that Peredo committed the tort alleged, the consequences occurred in Illinois, where Holland resides[6] and payment was expected, and not in Texas, where a Holland representative retrieved his email and spoke on his mobile telephone. *See Buffet Partners, L.P. v. Sheffield Square, L.L.C.,* 256 S.W.3d 920, 924 (Tex.App.-Dallas 2008, no pet.) (rejecting specific jurisdiction where "[t]he sole connection to Texas was that it was the state in which [the plaintiff] received the communications"). Not only was it simply fortuitous that a Holland representative received Peredo's statements in Texas, but there is no substantial connection between Peredo, Texas, and Holland's claims. *See id.; see also Moki Mac,* 221 S.W.3d at 588 (rejecting specific jurisdiction and distinguishing cases in which the forum contact bore a "direct link" to the claimed injury); *Brocail v. Anderson,* 132 S.W.3d 552, 563 (Tex.App.-

---

**5.** Holland repeated this argument almost verbatim on appeal, but without citing authority.

**6.** *See Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.,* 130 S.W.3d 170, 175 n. 7 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("[a] corporation's residence is the place where its corpo-

rate affairs are conducted—its principal place of business." (quoting *Ring Power Sys. v. Int'l de Comercio Y Consultoria, S.A.,* 39 S.W.3d 350, 355 (Tex.App.-Houston [14th Dist.] 2001, no pet.), *disapproved on other grounds, Michiana,* 168 S.W.3d at 791–92 & n. 81)).

Houston [14th Dist.] 2004, pet. denied) ("Any tort occurred in the exercise of medical judgment in prescribing a course of physical therapy in Michigan, not from the communication of that prescription [to Texas].").

### 5. *Holland's Business Relationship with Cuadro*

Holland further contends that the trial court could exercise personal jurisdiction over Peredo because "the broader business relationship between Cuadro and M. Holland, was based, in large part, on communications occurring in Texas or with a Texas resident." But Cuadro's relationship with Texas is not necessarily the same as Peredo's relationship with Texas, and in our jurisdictional inquiry, we may consider only purposeful contacts by Peredo in which he sought some benefit, profit, or advantage by availing himself of Texas jurisdiction. *See Michiana*, 168 S.W.3d at 785. Because Holland has made no allegations that, if established, might permit the trial court to impute Cuadro's contacts to Peredo,[7] Cuadro's contacts with Texas do not form part of our analysis.

In sum, we conclude that Peredo negated Cuadro's allegations of purposeful availment, and the evidence does not support implied findings from which the trial court could have concluded that the minimum-contacts requirements has been satisfied.

### B. Fair Play and Substantial Justice

In light of our conclusion that Peredo negated Cuadro's allegations of purposeful availment, we do not reach the second prong of the due process requirements. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir.2001) (per curiam) (declining to examine the fair-play-and-substantial-justice prong of the due process requirements after concluding that the nonresident defendant lacked minimum contacts with Texas); *Moki Mac*, 221 S.W.3d at 585–88 (omitting consideration of this due-process requirement after concluding that there was no substantial connection between the defendant's conduct and the operative facts of the litigation).

### VI. CONCLUSION

Because the contacts at issue in this case do not constitute "purposeful availment," we sustain Peredo's sole issue on appeal, reverse the trial court's order denying Peredo's special appearance, and remand for severance and dismissal of the claims against him.

Former Justice GUZMAN not participating.

---

**7.** *Cf. Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 730 (Tex.App.–Houston [14th Dist.] 2008) (reviewing trial court's rejection of plaintiffs' theories of agency, alter ego, and single business enterprise as grounds for imputing corporation's contacts to individual).