**Reversed and Remanded and Memorandum Opinion filed October 6, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00428-CV

---

### DONALD SEEBERGER, Appellant

### V.

### DEACERO, S.A.P.I. DE C.V., Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2020-05593**

---

### MEMORANDUM OPINION

Appellant Donald Seeberger asserts the trial court erred in granting Deacero, S.A.P.I. de C.V.'s (Deacero) special appearance. We agree, sustain Seeberger's sole issue, reverse the final judgment of the trial court, and remand the case to the trial court for further proceedings.[1]

---

[1] Seeberger presents a single point of error on appeal. Deacero in its response "raises" three issues with several subissues in responding to Seeberger's jurisdictional arguments. Deacero, however, has neither filed a notice of appeal nor otherwise asserted any error in the trial

# I. BACKGROUND

Seeberger is an employee of BNSF Railway Company. In November 2019, he was working in a Houston-area switching yard when he was struck and injured by a door protruding from a nearby railcar.

The railcar with the protruding door was filled with steel product manufactured by Deacero, a Mexican corporation. Employees of Deacero loaded spools of coiled wire into the car at one of Deacero's facilities located in Mexico and allegedly improperly secured the spools within the railcar. Deacero tendered the railcar to BNSF in Texas for transit to a customer in North Carolina, pursuant to a shipping agreement between Deacero and BNSF. The spools shifted in transit, damaged the rail-car door, and caused the door to protrude.

In January 2020, Seeberger filed a personal-injury lawsuit against BNSF, Deacero, and several other defendants. Deacero filed a special appearance, which was granted in April 2021. Seeberger moved for reconsideration, as well as for a new trial. Though the trial court did not rule on these motions, Deacero's motion to sever claims against Deacero was granted in July 2021. Seeberger appeals from this final judgment.[2]

# II. ANALYSIS

## A. Standard of review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions

_____

court's final judgment.

[2] Although the August 4, 2021 severance order does not state with unmistakable clarity that it is a final judgment as to all claims and all parties, we conclude that the August 4, 2021 severance of Seeberger's claims against Deacero into a new cause number created a final judgment that actually disposed of all claims and parties then before the court. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001).

2

of fact in order to decide the issue. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not state findings of fact and conclusions of law with its ruling on a special appearance, all findings necessary to support the ruling and supported by the evidence are implied, although the sufficiency of the record evidence to support those findings may be challenged on appeal. *BMC Software,* 83 S.W.3d at 795.

A trial court should resolve a party's special appearance based on the pleadings, any stipulations between the parties, affidavits and attachments filed by the parties, relevant discovery, and any oral testimony put forth before the court. *See* Tex. R. Civ. P. 120a(3).

## B. Jurisdictional-pleading requirements

Our special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. We have consistently held that the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Kelly v. Gen. Interior Const., Inc*., 301 S.W.3d 653, 658 (Tex. 2010). We may look to Seeberger's petition, as well as his response to Deacero's special appearance to determine whether he met his burden. Tex. R. Civ. P. 120a(3); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Here, Seeberger satisfied his burden of pleading sufficient allegations to bring Deacero within the reach of the Texas long-arm statute by asserting that Deacero conducted substantial business in Texas and committed a tort in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

Next, Deacero had the burden to present sufficient evidence to defeat Seeberger's allegations and negate all bases of personal jurisdiction. *Kelly*, 301

S.W.3d at 658–59 ("Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts[.]"). Deacero's argument below and in this court is that the evidence is legally insufficient to establish jurisdiction because Seeberger's claims do not arise out of any contacts it had with Texas.

## C.      Specific personal jurisdiction

It is undisputed that Deacero is a nonresident defendant and has no principal place of business in Texas. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."); *see also Domicile*, Black's Law Dictionary (11th ed. 2019), *available at* Westlaw ("The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."). Because Seeberger does not allege Deacero is subject to general personal jurisdiction in Texas, our analysis focuses on whether the trial court can exercise specific personal jurisdiction over Deacero.

Courts have personal jurisdiction over a nonresident defendant when the state's long-arm statute permits such jurisdiction and the exercise of jurisdiction is consistent with federal and state due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The Texas long-arm statute broadly allows courts to exercise personal jurisdiction over a nonresident who is doing "business in this state" and "commits a tort in whole or in part in this state."

Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). The broad "doing business" language in the Texas long-arm statute allows the exercise of personal jurisdiction to "reach[ ] as far as the federal constitutional requirements of due process will permit." *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977) (interpreting former Revised Statutes art. 2031b, Act of Mar. 18, 1959, 56th Leg., R.S., ch. 43, § 4, 1959 Tex. Gen. Laws 85, 85–86) (amended 1979) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 17.042). Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Minimum contacts, sufficient to establish specific jurisdiction over a nonresident defendant, exist when (1) the defendant's contacts with the forum state are purposeful and (2) the litigation arises from or relates to those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *See Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 414 (1984); *Shaffner v. Heitner*, 433 U.S. 186, 204 (1977). The nonresident defendant must take action that is purposefully directed at the forum state. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007). To determine whether the nonresident defendant purposefully directed action toward Texas, we examine the nonresident defendant's conduct indicating an intent or purpose to serve the Texas market. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987); *Moki Mac*, 221 S.W.3d at 577. When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are

isolated or sporadic. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Specific jurisdiction is established when the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Helicopteros*, 466 U.S. at 414 n.8.

### 1. Purposeful availment

The first prong of specific jurisdiction, purposeful availment, is the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex. 2005). To determine whether a defendant has purposefully availed himself of the benefits of Texas law, we consider (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous," and (3) whether the defendant sought "some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* at 785. "The purposeful availment test should focus on 'the defendant's efforts to avail itself of the forum' and not 'the form of action chosen by the plaintiff.'" *Moki Mac,* 221 S.W.3d at 576; *see Michiana,* 168 S.W.3d at 789–90 (for determining personal jurisdiction, "it is 'the defendant's conduct and connection with the forum' that are critical") (quoting *Burger King,* 471 U.S. at 474).

Directing a tort at Texas is not sufficient to confer jurisdiction. *See Bell*, 549 S.W.3d at 562 ("We recognize that a state has a special interest in exercising jurisdiction over those who commit torts within its territory . . . [h]owever, that interest cannot and must not displace the purposeful-availment inquiry, the mere allegation that a nonresident directed a tort from outside the forum against a resident is insufficient to establish personal jurisdiction."). In other words, the sole act of improperly loading a railcar in Mexico and then allowing it to be transported through Texas is not enough to confer jurisdiction, even if the railcar injures a

6

person in Texas. *See Zinc Nacional, S.A. v. Bouche Trucking, Inc*., 308 S.W.3d 395, 396–98 (Tex. 2010) (merchant's decision to ship its goods through third-party shipper where goods travel through Texas to recipient outside of Texas does not, by itself, constitute, purposeful availment). There must be additional conduct connecting the defendant to the jurisdiction including the intent or purpose to serve the market in the forum state. *Id*. at 398.

Here, we have such additional conduct. Although Deacero relies on the similarity between the facts of *Zinc Nacional* and the facts of the instant case, there are important differences. In *Zinc Nacional*, the Mexican merchant had no relationship with the trucking company carrying its goods through Texas. *Id*. at 396. Rather, the Mexican merchant contracted with a Mexican shipping company, which in turn contracted with a Texas-based shipping company to transport Zinc's goods through Texas into New Mexico. *Id*. In contrast, Deacero contracted directly with BNSF, a Texas-based shipper, and agreed to follow BNSF's contract rules and terms (including loading protocols). The facts of this case do not present a simple directing-a-tort-at-Texas scenario as Deacero suggests. Deacero has other contacts with Texas beyond the location of the accident.[3] An affidavit from BNSF[4]

---

[3] In *Zinc Nacional*, the supreme court's conclusion there was no purposeful availment was founded on the conclusion that the only contact between Texas and the Mexican manufacturer was the location of the accident, i.e., the fact the goods had to be shipped through Texas. *See Zinc National*, 308 S.W.3d at 398. The supreme court also made the following comment: "Although Zinc does have three or four customers for its other products in Texas, and does receive some raw materials from Texas, these facts are unrelated to the accident in this case and are thus irrelevant to the question of specific jurisdiction." *Id*. This presents another distinguishing factor between the two fact patterns. Deacero does not dispute the evidence reflecting that it had other customers in Texas for its wire spools. Deacero also does not deny it intended to avail itself of the rights and privileges of doing business in Texas by selling wire spools to Texas customers. The affidavit from BNSF established a significant portion of the shipment, of which the railcar at issue was part, was intended for customers or destinations in Texas. Instead, Deacero asks us to look at the railcar in isolation and deem the rest of its shipment and contacts to be irrelevant. Unlike the distinct business lines in *Zinc Nacional*, Deacero's other Texas contacts are not irrelevant to the facts of this litigation.

reflects that Deacero entered into a shipping agreement with BNSF for the purpose of shipping its goods into and through Texas. It was not simply fortuitous that the subject railcar was in Texas. BNSF's affidavit, which was uncontroverted by Deacero, reflects that a significant portion of the products shipped pursuant to the contract between BNSF and Deacero in place at the time were delivered to locations and/or customers in Texas. Deacero argues that the volume of its products shipped into Texas is meaningless because there was no allegation of general jurisdiction. However, this evidence reflects an intent to serve the Texas market and to purposefully avail itself of the benefits of doing business in Texas. This intent is also supported by Deacero's contract with BNSF to ship its goods to customers using Texas-based rails, services, and personnel. The evidence in the record supports the conclusion that Deacero took purposeful action to serve or seek the benefit of the Texas market.

## 2. The relatedness requirement

We next determine whether this litigation arises from or relates to Deacero's contacts in Texas. In *Moki Mac*, the supreme court held that the relatedness requirement is satisfied by a "substantial connection" between the nonresident defendant's contacts and the "operative facts of the litigation." 221 S.W.3d at 585. After *Moki Mac*, the Supreme Court of the United States explained that the "arise out of or relate to" standard suggests there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,

---

[4] BNSF, a pre-severance defendant in the trial court, filed a cross-claim against Deacero as well an objection to Deacero's special appearance. BNSF dismissed its cross-claim against Deacero before the hearing on Deacero's special appearance. Though BNSF initially filed an objection to Deacero's special appearance, it did not contest the special appearance at the hearing. Seeberger now relies almost exclusively on evidence in the record supplied by BNSF.

137 S. Ct. 1773, 1780 (2017) (alteration in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In other words, "specific jurisdiction is confined to adjudication of issues *deriving from*, or *connected with*, the very controversy that establishes jurisdiction." *Id.* (emphasis added). However, in *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court clarified that a strict causal relationship is not required. 141 S. Ct. 1017, 1026 (2021).

Deacero's primary argument against jurisdiction is that the operative facts of this litigation—the loading of the railcar which is alleged to have caused Seeberger's injuries—arose from conduct in Mexico and not any contacts Deacero may have in Texas. Deacero focuses on the railcar and argues the destination was intended to be North Carolina, which was not connected to any contacts that Deacero might have had in Texas. However, Deacero's position conflicts with recent Supreme Court precedent, specifically *Ford Motor*, decided after the trial court granted Deacero's special appearance.[5] In *Ford Motor*, two plaintiffs sued Ford in their home states. 141 S. Ct. at 1022. Ford argued that because the vehicles at issue were not designed, manufactured, or sold in the forum state, specific jurisdiction was not established. *Id.* at 1022–24. However, the Supreme Court held the relatedness prong does not require a strict causal relationship, because it was Ford's relationship with the forum state that gave rise to specific jurisdiction, not the specific vehicle involved in the lawsuit. *Id.* at 1026.

Following *Ford*, the Supreme Court of Texas cautioned parties against compressing the analysis and evidence of purposeful availment with that of relatedness. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 18 (Tex.

---

[5] The trial court held a hearing on Deacero's special appearance in April 2021 just days after *Ford Motor* was decided. However, the trial court did not have the benefit of any briefing or argument on the effect of *Ford Motor* on the case.

2021) ("By compressing the analysis into one step, the court entangled the evidence relevant to [appellee's] purposeful Texas contacts with evidence necessary to establish the lawsuit's relatedness to those contacts."). "Actionable conduct is that 'from which the claim arose' and forms the basis of liability, such as a hiking accident." *Id.* at 18 (citing *TV Azteca*, 490 S.W.3d at 53). "Additional conduct demonstrates 'an intent or purpose to serve the market in the forum State,' such as advertising there. *Luciano*, 625 S.W.3d at 18 (quoting *Moki Mac*, 221 S.W.3d at 577). Additional conduct "serves merely to ensure that the nonresident defendant has purposefully targeted the Texas market" and does not require a strict causal connection to the operative facts of the lawsuit. *See Luciano*, 625 S.W.3d at 14, 18 ("This so-called relatedness inquiry defines the appropriate nexus between the nonresident defendant, the litigation, and the forum.") (internal quotation marks omitted).

Here, Deacero's actionable conduct is the packing of the railcar that caused injury to a Texas resident in Texas. The additional conduct considered by this court is Deacero's contract with BNSF, its purposeful availment of customers in the Texas market, as well as its use of Texas-based rail facilities and services for shipping its products to customers in Texas and all over the United States. Deacero's argument that a direct causal connection must exist between its additional conduct and the lawsuit sets a standard that is "too exacting and has been rejected by the Supreme Court." *See Luciano*, 625 S.W.3d at 18.

Instead, it is Deacero's relationship with Texas that determines the relatedness inquiry, not the railcar. Though we agree the railcar was not intended to serve the Texas market, the operative facts of this litigation arise out of Deacero's contacts with Texas, specifically the contract with BNSF and Deacero's purposeful availment of the benefits and privileges of conducting business in Texas. *See*

*Facebook, Inc. v. Doe*, 650 S.W.3d 748, 758 (Tex. App.—Houston [14th Dist.] 2022, no pet. h.) (social-networking platform was subject to personal jurisdiction in Texas for claim arising out of sex trafficking on website because claim arose from Facebook's intent to serve Texas market through operation of platform despite Facebook's argument that all relevant policies and decisions were made outside Texas). We conclude the relatedness requirement is satisfied.

### 3. Traditional notions of fair play and substantial justice

Typically, courts must also determine whether exercising jurisdiction comports with traditional notions of fair play and substantial justice. *See Bell*, 549 S.W.3d at 559; *see also Peredo v. M. Holland Co.*, 310 S.W.3d 468, 476 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (court considers whether exercise of jurisdiction offends traditional notions of fair play and substantial justice only if minimum contacts are established). In its appellate briefing, Deacero does not argue that the exercise of personal jurisdiction does not comport with notions of fair play and substantial justice. Deacero also did not challenge this issue in the trial court. Therefore, this issue is not before us. Tex. R. App. P. 33.1.

We sustain Seeberger's point of error.

### III.  CONCLUSION

We reverse the judgment of the trial court and remand the case to that court for further proceedings.

/s/    Charles A. Spain
Justice

Panel consists of Justices Zimmerer, Spain, and Poissant.