Opinion issued October 12, 2023



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-22-00561-CV

_____

**DAVID L. SHUMAN, Appellant**

**V.**

**DECLAN JAMES GANLEY, SEAN P. TRACEY, & SEAN P. TRACEY ESQ., P.C. D/B/A TRACEY FOX KING & WALTERS, Appellees**

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Case No. 2020-61864**

---

### MEMORANDUM OPINION ON REHEARING

Appellee Declan James Ganley filed a motion for en banc reconsideration of our April 27, 2023 memorandum opinion. *See* TEX. R. APP. P. 49.5 (En Banc Reconsideration). Treating the en banc motion as a request for panel rehearing, we deny rehearing but withdraw our opinion of April 27, 2023, vacate our judgment of

the same date, and substitute this opinion and judgment in their stead. Ganley's motion for en banc reconsideration of our prior opinion is moot.[1]

In this interlocutory appeal,[2] appellant David Shuman challenges the trial court's order denying his special appearance in the case brought by appellees Declan Ganley, Sean Tracey, and Sean P. Tracey Esq., P.C. d/b/a/ Tracey Fox King & Walters. Shuman contends that the trial court erred in denying his special appearance because the court lacks specific jurisdiction over him and in denying his motion to transfer venue.

We reverse and remand with instructions to the trial court to dismiss Shuman from the suit for lack of personal jurisdiction.

## Background

Declan Ganley, an Irish citizen living in Ireland, sued Sean Tracey, a Texas resident, who also has a home and office in Michigan, and Shuman, a New York

---

[1]   Because we issue a new opinion, the Motion for En Banc Reconsideration is moot. *In re Wagner*, 560 S.W.3d 311, 312 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding) ("Because we issue a new opinion in connection with denial of rehearing, the motion for en banc reconsideration is rendered moot."); *see also Poland v. Ott*, 278 S.W.3d 39, 41 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (noting that motion for en banc reconsideration rendered moot by withdrawal and reissuance of opinion and judgment); *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 40 n.4 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (supp. op. on reh'g) (noting that motion for en banc reconsideration moot when motion for rehearing granted and new opinion and judgment issue).

[2]   TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

2

resident. Ganley sued Tracey in Texas and alleged claims for breach of contract, fraud, and breach of fiduciary duty. Tracey, in turn, filed a third-party petition against Shuman for the same claims. The underlying controversy revolves around a debt owed by Ganley and guaranteed by Shuman.

## A.     Shuman guarantees a loan between Ganley and Worth.

Ganley owned 235,000 shares in Rivada Networks, Inc., a Delaware corporation with its principal place of business in Virginia. Ganley used his shares as collateral for a $3 million loan from Worth Capital Holdings ("Worth"). Worth is a Delaware entity that, at the time, had its principal place of business in New York.

A few months after the original loan agreement was executed, Ganley and Worth entered into an amended agreement that increased the principal by $1.5 million. On the same day, Shuman, who was Ganley's friend and occasional business partner, personally guaranteed Ganley's $4.5 million loan obligation. Ganley and Worth modified the loan agreement several times, including extending the maturity date and increasing the amount of the initial obligation in return for extension fees. The modifications included a list of various payoff amounts and dates whereby Worth would acquire Rivada stock at certain prices. After all modifications, Ganley owed Worth $9 million.

Ganley never repaid Worth. Worth foreclosed on Ganley's debt, including the Rivada stock that Ganley had used to secure the loan. Worth obtained Rivada common stock for $100,000. Worth sued Shuman in federal court in New York on Shuman's personal guarantee of Ganley's loan.

**B.      Ganley attempts to settle the lawsuit between Worth and Shuman.**

While Worth's suit against Shuman was pending, Ganley contacted Shuman and told him that Tracey was an investor in Rivada and a close acquaintance. Ganley told Shuman that he had been working with Tracey to obtain funding to resolve Worth's claims against Shuman so that the Rivada shares Worth had acquired could be recouped.

Ganley suggested that Shuman speak by phone with Tracey about his efforts to obtain settlement funding. Shuman and Tracey spoke by phone and email periodically for a few months regarding Shuman's efforts to negotiate a settlement with Worth and Tracey's efforts to obtain investment funds in Rivada for a settlement. The men never met in person.

Tracey found two investors, one of whom was in Texas. Ultimately, Shuman and Worth entered into a settlement agreement. In his capacity as Chairman and CEO of Rivada, Ganley approved the transfer of Rivada stock from Worth to Shuman, pursuant to the settlement agreement, and from Shuman to the two investors in return for their settlement funding.

4

Following the settlement, Shuman assigned his rights under the loan agreement, which he acquired from Worth through the settlement, to a third party, Astrea NYNY LLC, which sued Ganley in state court in New York. The New York court rendered a default judgment against Ganley.

**C.     Ganley and Tracey sue Shuman.**

Ganley and Tracey argue that Shuman did not follow through on their agreement regarding Rivada shares after the settlement. They argue that Shuman retained Rivada shares that the three men had agreed would be dispersed to each of them. A few weeks after the settlement agreement, Ganley sued Tracey in Texas alleging that he breached various duties by failing to secure the return of the Rivada stock collateral. Tracey filed a third-party claim against Shuman. Tracey asserted that Shuman was subject to personal jurisdiction in Texas because "the acts and omissions giving rise to this cause of action occurred in Texas and/or Shuman engaged the services of Tracey in Houston, Texas." Shuman filed a special appearance and motion to dismiss or transfer venue pursuant to the contractual forum-selection clauses in the underlying loan and settlement documents.

Ganley amended his petition to add claims against Shuman. Ganley alleged that Shuman was subject to personal jurisdiction in Texas because Shuman "engaged and purposefully availed himself of services by and through Defendant

5

Tracey in Houston, Texas. A substantial portion of the acts and omission complained of occurred in Harris County, Texas." Shuman filed an additional special appearance and motion to dismiss or transfer venue as to Ganley's claims.

Both Ganley's and Tracey's claims against Shuman allege that Shuman improperly retained 46,000 shares of 253,000 shares of Rivada stock that Worth assigned to Shuman through the settlement. Ganley and Tracey argue that Shuman previously agreed not to retain any of the stock. The trial court denied Shuman's special appearance and motion to dismiss or transfer. The trial court did not make any findings of fact or conclusions of law. Shuman appeals.

## Personal Jurisdiction

In his first issue, Shuman argues that the trial court erred in denying his special appearance because he did not have the minimum contacts with Texas necessary for Texas to assert jurisdiction over him.

The existence of personal jurisdiction is a question of law, which must sometimes be preceded by the resolution of underlying factual disputes. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Paul Gillrie Inst., Inc. v. Universal Comput. Consulting, Ltd.*, 183 S.W.3d 755, 759 (Tex. App.—Houston [1st Dist.] 2005, no pet.). When the underlying facts are undisputed or otherwise established, we review a trial court's denial of a special appearance de novo. *Paul Gillrie Inst.*, 183 S.W.3d at 759. Where, as here, a trial

6

court does not issue findings of fact or conclusions of law with its special-appearance ruling, all fact findings necessary to support the judgment and that are supported by the evidence are implied. *Marchand*, 83 S.W.3d at 795; *Paul Gillrie Inst.*, 183 S.W.3d at 759.

A trial court determines a "special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3). The plaintiff bears the initial burden of pleading allegations sufficient to bring the nonresident defendants within the provisions of the Texas long-arm statute. *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002); *Paul Gillrie Inst.*, 183 S.W.3d at 759. The burden of proof then shifts to the nonresident defendants to negate all the bases of jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985); *see also Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.").

A single basis for personal jurisdiction is sufficient to confer jurisdiction over a nonresident defendant. *See Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If a nonresident

7

defendant is subject to specific jurisdiction, this is sufficient. *See Am. Express Centurion Bank v. Haryanto*, 491 S.W.3d 337, 346 n.8 (Tex. App.—Beaumont 2016, no pet.); *Minnis*, 305 S.W.3d at 279. A court need not assess the nonresident defendant's contacts on a claim-by-claim basis where, as here, all claims essentially arise from the same forum contacts. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51 (Tex. 2013); *Proppant Sols. LLC v. Delgado*, 471 S.W.3d 529, 537 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Fourteenth Amendment's due process clause and the Texas long-arm statute are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE § 17.042; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226–27 (Tex. 1991). The Texas long-arm statute allows a court to exercise personal jurisdiction over nonresident defendants who do business in Texas. TEX. CIV. PRAC. & REM. CODE § 17.042. A nonresident defendant "does business" in Texas if he "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part" in Texas, he "commits a tort in whole or in part" in Texas, or he "recruits Texas residents, directly or through an intermediary located in [Texas], for employment inside or outside the state." *Id.* The Texas Supreme Court has repeatedly interpreted this statutory language "to reach as far as the federal constitutional

requirements of due process will allow." *Guardian Royal*, 815 S.W.2d at 226. Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Id.*

The United States Constitution permits a state to assert personal jurisdiction over a nonresident defendant only if he has some minimum, purposeful contacts with the state and if the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 326 (Tex. 1998). Nonresident defendants who have purposefully availed themselves of the privileges and benefits of conducting business in the state have sufficient contacts with the state to confer personal jurisdiction. *See Guardian Royal*, 815 S.W.2d at 226.

The "purposeful availment" requirement has been characterized by the Texas Supreme Court as the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). In *Michiana*, the Texas Supreme Court articulated three important aspects of the purposeful availment inquiry. *Id.* at 785. First, only the nonresident defendant's contacts with the forum count. *Id.* This ensures that a nonresident defendant is not haled into a jurisdiction solely by the unilateral activities of a third party. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, the acts relied on must be purposeful; the nonresident defendant may not be haled into a

9

jurisdiction solely based on contacts that are "random, isolated, or fortuitous." *Michiana*, 168 S.W.3d at 784 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Third, the nonresident defendant "must seek some benefit, advantage, or profit by 'availing' [himself] of the jurisdiction" because "[j]urisdiction is premised on notions of implied consent" and by "invoking the benefits and protections of a forum's laws, . . . a nonresident consents to suit there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The nonresident defendant's contacts with a forum can give rise to either general or specific jurisdiction. *Marchand*, 83 S.W.3d at 795. Specific jurisdiction is established if the nonresident defendant's alleged liability arises from or relates to an activity conducted within the forum. *Id.* at 796. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresident defendant, the forum, and the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575–76 (Tex. 2007).

Foreseeability is an important consideration in deciding whether a nonresident defendant has purposefully established minimum contacts with the forum state. *Burger King Corp.*, 471 U.S. at 474; *Guardian Royal*, 815 S.W.2d at 227. The concept of foreseeability is implicit in the requirement that there be a substantial connection between the nonresident defendant and Texas, arising from

10

actions or conduct of the nonresident defendant purposefully directed toward Texas. *Guardian Royal*, 815 S.W.2d at 227.

## A. Specific Jurisdiction[3]

Shuman argues that the trial court erred in concluding that Texas has specific jurisdiction over him because he did not have substantial contacts with Texas, his interaction with a Texan was fortuitous rather than purposeful, and he did not seek advantage or profit by availing himself of Texas.

In determining whether Ganley and Tracey pleaded sufficient jurisdictional facts, we consider their pleadings as well as their responses to the amended special appearance. *See* TEX. R. CIV. P. 120a(3); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.). In conducting our review, we accept as true the allegations in Tracey's and Ganley's petitions. *See Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 86 (Tex. 2002) (in considering jurisdictional motions, reviewing court construes liberally pleadings in plaintiff's favor); *Max Protetch*, 340 S.W.3d at 883; *Touradji*, 316 S.W.3d at 23.

Ganley asserted first-party claims against Tracey for failing to ensure that the Rivada common stock was returned to Ganley. He also asserted claims against Shuman for failing to return the common stock. Tracey, in turn, asserted first and

---

[3]     Neither party argues the existence of general jurisdiction.

11

third-party claims against Shuman claiming that Shuman was the true cause of Ganley's injuries.

Both Ganley and Tracey allege the same contacts with Texas to justify personal jurisdiction over Shuman. They each allege that Shuman purposefully availed himself of services from Tracey in Houston and that a substantial portion of the acts and omissions underlying their claims occurred in Harris County.

In his special appearance, Shuman asserts that his only connection to Texas is that he had phone and email communications with Tracey, which he argues are insufficient to support personal jurisdiction. In his affidavit, Shuman states that it was Ganley who sought assistance from Tracey for outstanding debt in New York. Tracey first called Shuman at Ganley's behest. Shuman spoke with Tracey by phone and email, but he never met Tracey in person or conducted a video conference.

Shuman also argues that the dispute in the underlying case has nothing to do with Texas. None of the transactions or occurrences involved in the case occurred in Texas. Ganley's loan was not executed or performed in Texas, nor was Shuman's guarantee. Shuman asserts that the only connection with Texas is Tracey's residency.

In his response to Shuman's special appearance, Ganley alleges that the trial court has specific jurisdiction over Shuman because Shuman "sought counsel from

12

a Texas resident and licensed attorney (Tracey), asked Tracey to raise settlement funds from other Texas residents, regularly communicated with Tracey about the lawsuit and settlement, promised payment of company shares to Tracey, and converted shares rightly owned by Tracey." Ganley attached an affidavit by Tracey that states that Tracey was contacted by Ganley after a lender foreclosed on shares of Rivada that Ganley had pledged for a loan and co-signed with Shuman. The affidavit states that both Ganley and Shuman wanted Tracey's help to find people who could contribute to settling the litigation in exchange for a portion of Rivada shares. In the affidavit, Tracey testifies that he found a Texas-based investor willing to contribute, and that Shuman was not consulted because he had no standing in the interest of the shares. Tracey states that he emailed with Shuman and Shuman's attorneys regularly between May and October 2020 regarding the settlement and the funds raised for the settlement.

Shuman filed a supplement in support of his special appearance and attached another affidavit executed by Tracey in a separate action in New York. While Shuman disputes much of the New York affidavit, he points out that in the New York suit's affidavit, Tracey represents that he was hired by Ganley, rather than as a joint effort between Ganley and Shuman. The affidavit states that Tracey represented Ganley in his dispute with Worth Capital concerning shares of Rivada that collateralized a loan and were foreclosed upon. Tracey states that he brought

two investors to Ganley's attention and worked on a deal where the investors would provide investment capital to Rivada which could be used to fund a settlement with Worth Capital. Tracey's affidavit in the New York action states: "Mr. Shuman never spoke to either investor, and it was entirely due to my contacts and work on behalf of Mr. Ganley that Mr. Shuman was in any position to settle his lawsuit with Worth Capital at all."

Shuman also attached emails to the supplemental response showing that Tracey was in Michigan during some of their communication. He asserts that he had reason to believe that the lawyer Ganley hired was in Michigan rather than Texas.

On appeal, Shuman argues that communication with Tracey alone is not enough to establish specific jurisdiction. He cites to *Michiana* and argues that phone calls are not enough to establish purposeful availment. 168 S.W.3d at 791 (stating technology changes make reliance on phone calls obsolete as proof of purposeful availment). He further argues that to the extent Ganley and Tracey argue that Shuman entered into a contract with them, a contract formed by phone is still insufficient to confer jurisdiction. *See id.* at 787 (holding contract formed by phone with Texas resident insufficient to confer jurisdiction for disputes arising from contract). Shuman asserts that the bulk of his communication with Tracey occurred while Tracey was residing in his second home in Michigan. Shuman

14

reiterates that the only connection between Shuman and Texas supported by the record is the fact that Shuman communicated with Tracey by phone and email.

Ganley and Tracey argue on appeal that Shuman sought financial benefit in Texas by soliciting a Texas resident for a loan and that Tracey was Shuman's agent for doing so. Shuman responds that Tracey's affidavit's allegation that he acted as Shuman's agent in Texas is conclusory and that there is no evidence that Shuman engaged in any conduct in or directed at Texas.

## B.    Analysis

### 1.    Purposeful Availment

The pleadings and evidence do not support the trial court's implied findings that Shuman had sufficient minimum contacts with Texas and that these contacts were substantially connected to the operative facts of the litigation for the exercise of specific jurisdiction over Shuman to be proper. *See Moki Mac*, 221 S.W.3d at 575–76. We conclude that Shuman has negated all bases for an assertion of specific jurisdiction over him.

Regarding agency, Tracey and Ganley did not meet their initial burden of pleading allegations sufficient to confer jurisdiction. There is no pleading to support Tracey's or Ganley's allegation that Tracey was Shuman's agent. Ganley alleged claims for breach of contract, fraud, and breach of fiduciary duty. Tracey alleged claims against Shuman for breach of contract and breach of fiduciary duty.

15

"[T]he plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction." *Moncrief Oil*, 414 S.W.3d at 149. A defendant is obligated to "negate all possible grounds for personal jurisdiction alleged by the plaintiff." *Capital Fin. & Com. AG v Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 81 (Tex. App.— Houston [1st Dist.] 2008, no pet.) (refusing to consider agency theory on appeal when not pleaded). The defendant has no burden to negate a potential basis for personal jurisdiction when it is not pleaded by the plaintiff. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Tracey and Ganley waited until appeal to assert agency as a basis for jurisdiction. Accordingly, Shuman is not obligated to negate it.

Moreover, the uncontroverted evidence does not establish an agency relationship. Agency is a consensual relation between two parties "by which one party acts on behalf of the other, subject to the other's control." *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782–83 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (internal quotation omitted). Authorization to act and control of the action are the two essential elements of agency. *Id.* at 783. Agency is never presumed and the party asserting the relationship has the burden of proving it. *Capital Fin. & Com.*, 260 S.W.3d 67 at 83. The evidence does not support that an agency relationship existed between Shuman and Tracey. Tracey's declarations establish that he did not consult

Shuman regarding negotiations with investors and that the deal with the investors was "exclusively negotiated" by Tracy through Ganley. Tracey also stated that he represented Ganley, while Shuman had his own lawyers. There is no evidence to support an agency theory, and therefore, no basis to impute Tracey's conduct to Shuman for jurisdictional purposes. *See Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 843 (Tex. App.—Dallas 2014, no pet.) (holding no evidence to support agency-based theory of jurisdiction).

Ganley's and Tracey's allegations that Shuman's communication with Tracey establishes jurisdiction is similarly deficient. Ganley and Tracey rely on the fact that for a period of months, Tracey communicated by phone and email with Shuman or his counsel. Communications, without more, cannot support jurisdiction. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 560 (Tex. 2018) ("On their own, numerous telephone communications with people in Texas do not establish contacts."). The fact that Shuman or his counsel discussed with Tracey the progress toward settling the lawsuit with Worth by email or phone on numerous occasions does not demonstrate the quality and nature of communications to establish purposeful availment. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 74–75 (Tex. 2016) (stating that discussions on acquiring non-Texan assets do not establish purposeful contacts in Texas). As in *Searcy*, "the [Texas-based defendant] involved could, quite literally, have been based anywhere in the

17

world, and [the Canadian defendant company] would presumably have interacted with it in the same way as they did with its employees [in Canada]." *Id.* (holding no specific jurisdiction over Canadian defendant). The mere coincidence that Tracey was in Texas does not demonstrate that Shuman purposefully availed himself of Texas for jurisdictional purposes.

Ganley argues that jurisdiction is proper because not only did Shuman deliberately correspond with Tracey in Texas, but he also sought "some benefit, advantage, or profit by availing" himself of the jurisdiction. *Michiana*, 168 S.W.3d at 785 (stating court must find that defendant sought "benefit, advantage, or profit by availing himself of this State's jurisdiction"). Ganley argues that Shuman sought benefit of Texas by actively soliciting loans from Texans. The record does not support this contention. The uncontroverted evidence establishes that Ganley hired Tracey without Shuman's involvement. In negotiating the lawsuit with Worth, Tracey represented Ganley, and Shuman had his own counsel. Tracey worked exclusively on behalf of Ganley, and Shuman was not consulted about selecting or negotiating with any investors, whether based in Texas or elsewhere. It is fortuitous that Tracey was in Texas when he called Shuman at Ganley's request. It is equally fortuitous that Ganley chose Tracey, a Texas resident, to help resolve his litigation with Worth in New York and that one of the investors was a Texan.

The record does not reflect that Shuman solicited business or sought the benefit of Texas in a way that satisfies the long-arm statute. *Michiana*, 168 S.W.3d at 785.

## 2. Relatedness of Contacts to Litigation

Finally, Ganley and Tracey have not pleaded jurisdictional facts to satisfy the second prong of specific jurisdiction, which requires that there be a "substantial connection" between the defendant's forum contacts and the "operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. We consider what the claims are "principally concerned with," whether the contacts will be "the focus of the trial" and "consume most if not all of the litigation's attention," and whether the contacts are "related to the operative facts" of the claim. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 53 (Tex. 2016) (internal quotations omitted). Ganley's and Tracey's claims concern alleged statements by Shuman about the return of Rivada stock. Shuman denies making an agreement with Ganley or Tracey regarding the stock, but even if their allegations are true, the facts do not have a nexus to Texas. There is no allegation about the source of the funds used to satisfy Ganley's debt to Worth and to settle Worth's suit against Shuman. There is no allegation or claim related to Tracey's efforts to obtain those funds. The investors are not parties to the lawsuit, nor do the claims involve their participation in the settlement or their investment. The fact that Tracey found a Texas investor is unrelated to whether Shuman breached a contract, breached a fiduciary duty, or committed fraud against Tracey

19

or Ganley. *See Ajamie LLP v. Podesta Grp., Inc.*, No. 01-19-00503-CV, 2020 WL 716734, at *5 (Tex. App.—Houston [1st Dist.] Feb. 13, 2020, no pet.) (mem. op.) (holding "marginally relevant" Texas contacts insufficient to satisfy substantial connection between contacts and operative facts of litigation because contacts did not concern disputed facts).

Accordingly, we sustain Shuman's issue regarding denial of his special appearance. *See Peredo v. M. Holland Co.*, 310 S.W.3d 468, 476 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (when minimum-contacts requirement not met, unnecessary to address "fair play" portion of due-process test).

## Motion to Transfer Venue

Having reversed the trial court's ruling on specific jurisdiction over Shuman, we need not reach Shuman's second issue that the trial court erred in denying his motion to transfer venue. *See* TEX. R. APP. P. 47.1.

## Conclusion

Having concluded that Shuman lacks sufficient contacts with Texas to support the trial court's exercise of personal jurisdiction, we reverse the trial court's order denying his special appearance, render judgment dismissing the claims against him.


                                               Peter Kelly
                                               Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.